IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JENNIFER A. P.,

                Plaintiff,

        v.                                Civil Action No.
                                          5:20-CV-0758 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF

CONBOY, MCKAY LAW FIRM      VICTORIA H. COLLINS, ESQ.
407 Sherman Street
Watertown, NY 13601-9990

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        RAMI VANEGAS, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

      Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on January 6, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that the plaintiff was not

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the

Social Security Act, is AFFIRMED.

     3)    The clerk is respectfully directed to enter judgment, based

upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:    January 11, 2022
          Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JENNIFER P.,

                                    Plaintiff,


-v-                                 5:20-CV-758


COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
-----------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
January 6, 2022
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    CONBOY, MCKAY LAW FIRM
    407 Sherman Street
    Watertown, New York 13601
    BY:  **VICTORIA H. COLLINS, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    15 New Sudburty Street
    Boston, Massachusetts 02203
    BY:  **RAMI VANEGAS, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1            (The Court and all parties present by telephone.

2    Time noted:  11:18 a.m.)

3            THE COURT:  Let me begin by thanking both of you

4    again for excellent presentations.  I have enjoyed working with

5    you.

6            Plaintiff has commenced this proceeding pursuant to

7    42, United States Code, Sections 405(g) and 1383(c)(3) to

8    challenge a determination by the Commissioner of Social

9    Security -- I should say Acting Commissioner now, finding that

10   she was not disabled at the relevant times and therefore is

11   ineligible for the benefits for which she applied.

12           The background is as follows:  Plaintiff was born in

13   April of 1969 and is currently 52 years of age.  She was

14   47 years old at the time of the alleged onset of disability in

15   August of 2016.  Plaintiff stands approximately 5'3" inches in

16   height and weighs at various times, or has weighed, between 155

17   and 170 pounds.  Plaintiff is a widow.  Her husband died in

18   December of 2016.  The evidence is some equivocal as to whether

19   she lives alone.  She testified she lives alone in an apartment

20   in Watertown, but told Dr. Noia at page 914 of the

21   Administrative Transcript that she lives with a friend.

22           Plaintiff has a high school diploma and two years of

23   college education in accounting.  She was in regular classes

24   while in school.  She has also undergone medical and dental

25   secretarial training at BOCES.  She does not possess a driver's

1    license.

2              Plaintiff stopped working -- there's an indication

3    that it was April of 2016, elsewhere in the record August 4,

4    2015.  I believe it was the function report at page 35 she

5    indicates April of 2016.  There's an indication she stopped

6    working due to her husband's illness.  Prior to stopping work,

7    she was a self-employed person in the construction industry.

8    She was also a call center operator and a bookkeeper.

9              Physically, plaintiff suffers from back pain and

10   cervical spondylosis, as well as abdominal pain.  She has

11   undergone approximately seven hernia surgeries.  She has had

12   ilioinguinal blocks in August and October of 2018.  She

13   testified those did not help with her pain.  She also claims to

14   suffer from hip pain, knee pain, migraines, vertigo, but doesn't

15   appear to have any ongoing consistent treatment for those

16   conditions.

17             Mentally, plaintiff suffers from posttraumatic stress

18   disorder or PTSD, panic disorder, agoraphobia, major depressive

19   disorder, and there's some indication that there was a possible

20   hospitalization or appearance at an emergency department of a

21   hospital in 2018, perhaps for mental health issues.

22             Plaintiff's primary physician is -- treating source

23   is Physician's Assistant Marcus Knapp with the Samaritan Family

24   Health Center.  She also sees psychologist Dr. Lawrence Littell

25   every two weeks and has since approximately April of 2014.

1    Plaintiff undergoes treatment with Pain Solutions of Northern

2    New York with Dr. Bhupinder Bolla primarily for her abdominal

3    issues.  Plaintiff's activities of daily living include cleaning

4    but no mopping, cooking, she shops with help, does dishes,

5    watches television, watches movies, does puzzle books, and

6    reads.

7            Plaintiff has been prescribed over time various

8    medications primarily addressing her mental health issues

9    including Zoloft, Depakote, Wellbutrin, Klonopin, Sonata.  After

10   her surgery, she has been prescribed some pain medications,

11   although she testified at page 40 that doctors will not

12   prescribe any pain medications for her currently.  Plaintiff was

13   prescribed medical marijuana, but was decertified for that

14   prescription in October of 2018 due to having missed

15   appointments.  Plaintiff smokes cigarettes and obviously

16   marijuana.

17           Plaintiff procedurally applied for Title II and Title

18   XVI benefits on October 30, 2017, alleging an onset date of

19   August 4, 2016.  In support of her application, she claimed the

20   inability to work based upon severe anxiety, panic attacks,

21   depression, seven hernia surgeries, and pain in her hip to her

22   knees.  A hearing was conducted by Administrative Law Judge

23   Jeremy Eldred on July 1, 2019, to address plaintiff's

24   application for benefits.  ALJ Eldred issued an unfavorable

25   decision on August 16, 2019.  That became a final determination

1   of the agency on June 9, 2020, when the Social Security

2   Administration Appeals Council denied plaintiff's request for a

3   review.  This action was commenced on July 8, 2020, and is

4   timely.

5          In his decision, ALJ Eldred applied the familiar

6   five-step sequential test for determining disability.  He first

7   noted that plaintiff was last insured or would be -- yes, was

8   last insured for benefits on December 31, 2021.  At step one, he

9   concluded plaintiff had not engaged in substantial gainful

10  activity since August 4, 2016.  He did note that she did receive

11  some income in 2017 but it was not for working.

12         At step two, ALJ Eldred concluded that plaintiff does

13  suffer from severe impairments that impose more than minimal

14  limitations on her ability to perform basic work functions,

15  including degenerative changes of the lumbar spine, cervical

16  spondylosis, ilioinguinal neuralgia status post multiple hernia

17  repairs, major depressive disorder, generalized anxiety

18  disorder, panic disorder, and PTSD.

19         At step three, the Administrative Law Judge concluded

20  that plaintiff's conditions do not meet or medically equal any

21  of the listed presumptively disabling conditions set forth in

22  the Commissioner's regulations, specifically addressing 1.04

23  with respect to plaintiff's physical issues, noting that there

24  was no listing for ilioinguinal hernias, and the 12.00 and

25  following listings with regard to plaintiff's mental conditions

1    finding that the so-called B and C criteria applicable to those

2    were not met.  After surveying the record evidence, ALJ Eldred

3    concluded that plaintiff retains the residual functional

4    capacity or RFC to perform light work as defined in the

5    regulations, except she can only perform simple routine tasks,

6    cannot do work that requires a high production rate pace, no --

7    make simple work-related decisions, and can interact with

8    supervisors, co-workers, or the public no more than

9    occasionally.

10            Applying that RFC finding at step four, the ALJ

11   concluded that plaintiff is not capable of performing her past

12   relevant work and then proceeded to step five.

13            At step five, he found that if plaintiff could

14   perform a full range of light work, a finding of no disability

15   would be directed by the Medical-Vocational Guidelines set forth

16   in the Commissioner's regulations and specifically grid rules

17   202.21 and 202.14.  Because of the additional limitations that

18   contracted the job base on which the grids are predicated, ALJ

19   Eldred sought the testimony of a vocational expert who concluded

20   and testified that there is work available in the national

21   economy that plaintiff is capable of performing citing as

22   representative positions mail clerk, marker II, and office

23   helper.  The ALJ adopted that testimony and therefore found that

24   plaintiff was not disabled at the relevant times.

25            The Court's function in this case is limited to

1    applying an extremely deferential standard and determining

2    whether correct legal principles were applied and the resulting

3    determination is supported by substantial evidence which is

4    defined as such relevant evidence as a reasonable mind would

5    find sufficient to support a conclusion.  The Second Circuit in

6    *Brault v. Social Security Administration Commissioner*, 683 F.3d

7    443, Second Circuit, 2012, noted the deferential nature of that

8    substantial evidence standard finding it even more rigid than

9    the compelling evidence standard that we're familiar with and

10   noted pertinently that under the standard, once an ALJ finds a

11   fact, the fact can be rejected by a court only if a reasonable

12   factfinder would have to conclude otherwise.

13          In this case, the plaintiff raises three central

14   arguments:  She asserts it was error at step two to conclude

15   that her migraine headaches were not severe as defined in the

16   regulations; she challenges the residual functional capacity

17   finding as not supported by substantial evidence, focusing on

18   the exclusion of postural limitations primarily and mental

19   health limitations; and she challenges the Administrative Law

20   Judge's rejection of portions of medical opinions, arguing that

21   it represented a substitution of lay opinion for a competent

22   medical opinion.

23          The first argument, of course, relates to a step two

24   argument.  The governing regulations provide that an impairment

25   or combination of impairments is not severe if it does not

1  significantly limit claimant's physical or mental ability to do

2  basic work activities, 20 C.F.R. Section 404.1521, subsection A.

3  In subsection B, that regulation goes on to describe what is

4  meant by the phrase basic work activities, defining that term to

5  include the abilities and aptitudes necessary to do most jobs.

6  The Second Circuit -- I'm sorry, the second step requirement is,

7  as plaintiff argues, de minimis and intended only to screen out

8  the truly weakest of cases, *Dixon v. Shalala*, 54 F.3d 1019,

9  Second Circuit, 1995.  However, importantly, the mere presence

10 of a diagnosed impairment does not by itself mean that -- that

11 the step two threshold test has been met and does not

12 necessarily establish a condition as severe.

13          In this case, the Administrative Law Judge at page 16

14 rejected migraine headaches and specifically discussed why.  The

15 headaches are based solely on plaintiff's reports of seeking

16 medical marijuana, which, as I indicated previously, she was

17 decertified for.  There does not appear to be any other ongoing

18 treatment and what treatment there was, including an MRI that's

19 referenced in 2015, predate the onset date in this case.  It

20 was -- clearly the headaches have been noted in treatment notes

21 on occasion, but primarily in the history portion of those

22 notes -- those notes postdate the onset date of August 4, 2016.

23          As the Commissioner has argued, the plaintiff did not

24 allege headaches as a basis for her disability application.  She

25 does not appear to have any ongoing treatment and has not been,

1    other than the medical marijuana, specifically prescribed

2    anything for her headaches.  As she testified, the -- in fact,

3    her treatment providers have declined to provide her with pain

4    medication -- prescription pain medication, that is.

5            It's plaintiff's burden at this and all stages, up

6    through step four, to establish not only a condition, but

7    resulting limitations.  I find that that burden was not carried

8    in this instance with regard to the migraine headaches and

9    therefore do not find any error at step two.

10           The other two arguments being raised are somewhat

11   interdependent and a challenge to the residual functional

12   capacity finding of the Administrative Law Judge.  An RFC, of

13   course, represents the range of tasks that the claimant is

14   capable of performing notwithstanding his or her impairments, 20

15   C.F.R. Section 404.1545(a).  An RFC determination is informed by

16   consideration of a claimant's physical abilities, mental

17   ability, symptomology, including pain, and other limitations

18   which would interfere with work activities on a regular and

19   continuing basis.  And, of course, an RFC must address both

20   exertional and nonexertional impairments which flow from

21   plaintiff's conditions and have been proven by the plaintiff

22   whose burden it is.

23           In this case, the residual functional capacity

24   finding, as I already indicated, restricts plaintiff to light

25   work with some additional limitations addressing her mental

1    status.  The issue is -- the reaching limitation is the primary

2    issue.  Dr. Lorensen who prepared a report of a consultive

3    examination conducted on January 23, 2018, that appears at 920

4    to 923 of the Administrative Transcript, indicated a moderate

5    limitation for bending, lifting, and reaching.  The opinion of

6    non-examining consultant C. Krist, based on that consultative

7    report, proposes an RFC for light work with postural

8    restrictions on March 9, 2013.  That appears at page 953 of the

9    Administrative Transcript.

10           The Administrative Law Judge rejected the reaching

11   limitation and explained that rejection at page 19 of his

12   decision -- of the Administrative Transcript, I should say.  Dr.

13   Krist, of course, is a non-examining physician.  Dr. Lorensen's

14   opinion is inconsistent with treatment records and her own

15   examination of the plaintiff.  Under the musculoskeletal

16   findings, she notes forward elevation and abduction of shoulders

17   100 degrees bilaterally with full range of motion of elbows,

18   forearms, and wrists bilaterally.  The reaching limitation also

19   does not appear to be supported by any of the medical treatment

20   records.  The -- most of the evidence of treatment show full

21   range of motion in upper extremities.  The claimant has not, I

22   find, carried her burden of demonstrating the existence of a

23   reaching limitation which would be potentially inconsistent with

24   the RFC and the resulting determination.

25           Mentally, the plaintiff argues based upon the

1  opinions of Dr. Littell who issued opinions of March 11, 2017,

2  that's at 1377, May 2, 2018, 1378, and April 3, 2019, 1379.

3  Those opinions are extremely difficult to read, conclusory in

4  nature, and primarily addressed plaintiff's ability to work,

5  which, of course, is a matter reserved to the Commissioner.

6  Those were rejected by the Administrative Law Judge, the

7  rejection was explained at page 21, and it was rejected based on

8  the fact that they're inconsistent with treatment records and

9  plaintiff's status -- medical status exams and inconsistent with

10 an earlier medical source statement that is somewhat more

11 comprehensive given by Dr. Littell on December 22, 2017.  That

12 appears at 901 through 903 of the Administrative Transcript.

13         The opinion of Dr. Littell given in December of 2017

14 finds marked and extreme limitations only with respect to the

15 ability to understand and remember, carry out, and make

16 judgments with regard to complex work-related decisions, which,

17 of course, is not inconsistent with the ability to perform

18 simple unskilled work or the RFC finding in this case.  The

19 opinion is also inconsistent with a Dr. Dennis Noia report of an

20 examination on January 23, 2018, that appears at 914 through 918

21 of the Administrative Transcript, which only finds marked

22 limitations in the ability to regulate emotion, control

23 behavior, and maintain wellbeing, which is something that would

24 appear to be consistent with or accommodated by the RFC,

25 including the limitation on interaction.

1          The -- Dr. Littell's opinion is also inconsistent

2    with an opinion given by L. Blackwell, a Ph.D., on March 13,

3    2018, who is, of course, a non-examining state agency consultant

4    at page -- and that's Exhibit 2A.  Dr. Blackwell opined that

5    plaintiff retains the ability to perform the basic mental

6    demands of unskilled work.  The -- I think it's also repeated at

7    Exhibit 3A.

8          What essentially the plaintiff was asking the Court

9    to do is to reweigh the medical evidence, which, of course, is

10   something that is not in the Court's purview.  It is for the

11   Administrative Law Judge to weigh any conflicts in the medical

12   opinions under *Veino v. Barnhart,* 312 F.3d 578, Second Circuit,

13   2002.  The ALJ did that and properly relied on treatment notes,

14   clinical findings and testing, and did not, in my view, run

15   afoul of the prohibition on interpreting the raw data and

16   substituting lay opinion for a competent medical opinion, *Heaman*

17   *v. Berryhill*, 765 F. App'x 498, Second Circuit, 2019.

18          The plaintiff has admittedly pointed to some medical

19   evidence that is inconsistent with the ultimate determination

20   and RFC finding.  That alone, however, is not sufficient.  What

21   the focus is upon is whether substantial evidence, including

22   those treatment records, also support the RFC finding and

23   ultimate determination, and I find that they do and that

24   plaintiff is unable to show that no reasonable factfinder would

25   reach the result found by the Administrative Law Judge, *Z.J.F, a*

 1   *minor, by D. Conkling v. Colvin*, from the Northern District of

 2   New York, civil action number 16-CV-1397, 2018 WL 1115516, and

 3   it is a decision from February 27, 2018.

 4           So in conclusion, I find that correct legal

 5   principles were applied and substantial evidence does support

 6   the ultimate determination reached and therefore will grant

 7   judgment on the pleadings to the defendant and order dismissal

 8   of plaintiff's complaint.

 9           Thank you again.  I hope that you both stay safe in

10   this difficult environment.

11           MS. COLLINS:  Thank you, your Honor.

12           MS. VANEGAS:  Thank you, your Honor.

13           (Time noted:  11:43 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3

 4                    CERTIFICATE OF OFFICIAL REPORTER

 5

 6

 7            I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

 8   NYRCR, Official U.S. Court Reporter, in and for the United

 9   States District Court for the Northern District of New York, DO

10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United

11   States Code, that the foregoing is a true and correct transcript

12   of the stenographically reported proceedings held in the

13   above-entitled matter and that the transcript page format is in

14   conformance with the regulations of the Judicial Conference of

15   the United States.

16

17            Dated this 10th day of January, 2022.

18

19            s/ Hannah F. Cavanaugh_____

20            HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

21            Official U.S. Court Reporter

22

23

24

25
```